**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.1:11CR437 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| ANTHONY O. CALABRESE, III, et | ) | |
| al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Defendant Anthony Calabrese, III has moved to have the present case reassigned to a district judge by random draw. (Doc. No. 55.) Because this case was properly transferred to the docket of the undersigned pursuant to the Court's local criminal rules, the motion is DENIED.

## I.        BACKGROUND

On September 22, 2011, the grand jury returned a multi-count indictment against Calabrese and defendant Sanford Prudoff. (Indictment, Doc. No. 1.) By the indictment, Calabrese is charged with RICO conspiracy, Hobbs Act conspiracy, conspiracy to commit mail and honest services mail fraud, mail fraud, conspiracy to commit bribery concerning programs receiving federal funds, and tampering with a witness, victim or an informant. Defendant Prudoff is charged with conspiracy to commit mail fraud, making false statements to law enforcement, and several counts of making or filing a false tax return. (*Id.*)

The indictment was one in a string of indictments growing out of a federal investigation, conducted over a number of years, into allegations of public corruption and conspiracy in Cuyahoga County, Ohio. During the course of the three-year investigation, federal agents utilized a variety of investigatory tools including- search warrants, physical surveillance, trash pulls, trap and traces, confidential sources, and consensual monitoring. (*See United States v. Dimora, et. al.*, Case No. 1:10CR387, Doc. No. 592 at 55.)  The FBI also conducted over 10 months of wiretaps on the cellular and land lines of various alleged conspirators. While the purpose of the wiretaps was to capture and record conversations between alleged conspirators regarding matters central to the conspiracy, it is not surprising that the wiretaps also intercepted conversations with third-parties that were unrelated to the conspiracy.

Several of the earliest cases brought as a result of the FBI's investigation were randomly assigned to the docket of the Honorable Kathleen O'Malley. By agreement of Judge O'Malley and the transferring judges, and pursuant to the Court's local rules, numerous subsequent cases arising out of the same FBI investigation that were originally randomly assigned to other judges were reassigned to Judge O'Malley as related cases. After Judge O'Malley was elevated to the Federal Circuit, these same cases were reassigned to the undersigned. (*See* General Order 2011-5.)

The present case was originally randomly assigned to the docket of the Honorable Donald Nugent. In accordance with the Court's local rules, the government filed a notice of relatedness, identifying the present case as related to four other pending criminal matters, all of which were assigned to the docket of the undersigned. (Doc. No. 5.) After conducting two pretrial conferences, requesting briefing on the question of

whether the case was related to those identified in the government's notice, and conferring with the undersigned on the issue of relatedness, Judge Nugent transferred the present case to the undersigned as a related case under Local Criminal Rule 57.9(b)(3).[1] (October 12, 2011 Order of Reassignment, Doc. No. 22.)

The predicate for defendant Calabrese's motion is the apparent fact that brief telephone calls involving Judge Nugent were a part of the materials turned over by the government in discovery. The calls do not reveal any wrong doing or criminal activity on the part of Judge Nugent, and there is an absence of any indication that Judge Nugent knew of or was a part of the charged conspiracy. (*See* Doc. No. 55-1.) Further, defendant Calabrese does not suggest that Judge Nugent was aware that the calls had been captured during the federal investigation when he transferred the case to the undersigned.

While all of the wiretaps were disclosed to defendants on December 2, 2011, Calabrese contends that the government should have specifically brought the calls involving Judge Nugent to the attention of the court and defendants immediately upon Judge Nugent's assignment to the case. Calabrese claims that the government's failure to do so violated his due process rights by depriving Judge Nugent of the opportunity to consider recusal before transferring the case. He further claims that the government intentionally withheld this information in order to steer this case to the undersigned's docket. His allegations are without merit.

---

[1] While Calabrese does not directly challenge the determination of both this Court and Judge Nugent that the case is related to others cases previously assigned to the undersigned in this motion, he has previously questioned the connection. The present case, however, shares alleged facts with numerous other cases— stemming from the same Cuyahoga County investigation—that are currently pending with, or that already have been presided over by, the undersigned. Indeed, alleged facts relating to a fraudulent scheme charged in the present indictment involving Alternatives Agency, which was an alleged client of Calabrese's law firm, was one of the focal points of the recent trial in *United States v. Dimora, et al.,* Case No.1:10CR387.

## II.        LAW AND ANALYSIS

The present case was transferred to the undersigned under Local Criminal

Rule 57.9(b)(3), which provides:

> Related cases. A case may be re-assigned as related to an earlier assigned
> case with the concurrence of both the transferee and the transferor District
> Judges. The United States Attorney's Office shall, in any case which is, or
> might be considered, related to another case, file a motion/notice with both
> District Judges advising the Court of the relationship. A new violation
> resulting in a federal indictment or information may be considered related
> to the previously filed case. The United States Attorney's Office shall
> notice the Court pursuant to this paragraph.

The obvious purpose of this rule is to conserve judicial resources by permitting a judge

already familiar with the record of one case to also administer related cases, which are

likely to share facts and legal issues. Such a rule is especially beneficial in cases, such as

the present one, where the records are voluminous.

"Congress has granted broad discretion to the federal district courts in the

assignment of cases to particular judges." *United States v. Pearson*, 203 F.3d 1243, 1256

(10th Cir. 2000) (quoting 28 U.S.C. § 137 (" 'The business of a court having more than

one judge shall be divided among the judges as provided by the rules and orders of the

court.' ")). The Sixth Circuit has observed that "[l]ocal rules governing the assignment of

cases are designed as internal housekeeping rules to promote the efficient operation of the

district courts; they are not meant to confer rights on litigants." *Sinito v. United States*,

750 F.2d 512, 515 (6th Cir. 1984).

The Court has recently addressed the application of this internal

housekeeping rule, and its relationship to a defendant's constitutional right to a fair trial,

in connection with the assignment of another case that arose out of the same federal

4

investigation. (*See United States v. Forlani, et. al.*, Case No. 1:11CR491, Doc. No. 52.)
Calabrese suggests that the situation presented in *Forlani* is distinguishable from the one
at issue in this case. Calabrese is right; the present case is distinguishable in that it
presents a far *less* compelling case for transfer.

The *Forlani* case was originally randomly assigned to the docket of the
Honorable James Gwin. After the government filed a notice of relatedness, indentifying
the case as related to several other cases pending on this Court's docket, but before the
case was transferred, the government brought to Judge Gwin's attention certain
information that the government believed he should consider in determining whether he
should preside over the case. Judge Gwin ultimately transferred the case to the
undersigned, and this Court found that it was clear from the record that Judge Gwin chose
not to recuse , but, instead, "determined that the case should be transferred as a related
case."[2] (Case No. 1:11CR491, Doc. No. 52 at 8.) *See, e.g, United States v. Torbert*, 496
F.2d 154, 156 (9th Cir. 1974) (finding that a case was properly transferred under a local
rule, despite the fact that sufficient evidence had been presented to the transferring judge
to warrant his recusal, where there was no evidence that the trial judge had decided to
recuse himself).

It is apparent that Judge Nugent, unaware of any possible basis for recusal
(valid or otherwise), transferred the case under the Court's relatedness rule. The Due
Process Clause guarantees a criminal defendant the right to a trial before a fair and

---

[22] Noting that a court "speaks through its record," *United States v. Garcia*, 312 F. App'x 801, 808 (6th Cir.
2009), the Court observed that the order of reassignment clearly indicated that the case was being
transferred under the local rules as a related case. *Id.* at 8.

impartial judge, *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997), *In re Murchison,* 349 U.S. 133, 136 (1955), and it is clear that the transfer took place between two fair and impartial judges. Due process requires nothing more. *See Suh v. Pierce*, 630 F.3d 685, 692 (7th Cir. 2011) (no due process violation where trial judge was unaware that he had a connection to the family of the victim).[3] Importantly, Calabrese does not allege that this Court, the court receiving the transfer and the court that will ultimately try this case, has any actual bias. *See, e.g., Torbert*, 496 F.2d at 156 (explaining that the transfer of a case from one judge to another cannot violate a defendant's due process rights where the judge receiving the case is fair and impartial).

Calabrese suggests, however, that the transfer was impermissibly tainted by the fact that the government intentionally withheld information regarding Judge Nugent's connections with certain coconspirators in an effort to steer the case to the undersigned. This argument is without merit. As a factual matter, the government was under no obligation to reveal this connection because such a connection would not have impacted Judge Nugent's ability to hear the case. A district court judge must recuse himself where "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. This standard is objective and is

---

[3] Of course, "even when a judge lacks actual knowledge of the facts indicating his interest or bias in a case if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge" he must recuse. *Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847, 860 (1988) (internal quotation and citation omitted). However, given the fact that the telephone conversations were intercepted covertly, a reasonable person would not expect that Judge Nugent had actual knowledge that his calls were intercepted. Moreover, in light of the fact that the conversations involving Judge Nugent did not involve illegal activity, it is "self-evident that a reasonable person would not believe that [Judge Nugent] had an interest or bias" while he briefly presided over this case. *See Sao Paulo State of Federative Republic of Brazil v. Am. Tobacco Co*., 535 U.S. 229, 233 (2002) (finding no error in a trial court's refusal to recuse where he was unaware that his name had appeared on an *amicus curiae* in a related case filed nine years previously and the judge had played no role in the preparation of the brief.

not based on the subjective view of a party." *United States v. Nelson*, 922 F.2d 311, 319 (6th Cir. 1990) (internal quotations and citations omitted). However, "a judge need not recuse himself on the basis of prior contact with a party or a witness, as long as the judge does not have a familial, financial, or similarly close relationship with the party or witness and as long as the judge has not received out-of-court information about the case at hand." *Johnson v. Mitchell*, 585 F.3d 923, 946 (6th Cir. 2009) (fact that the district judge was a colleague of the lead prosecutor at the time of defendant's first trial did not preclude the judge from considering a subsequent habeas petition); *see, e.g., United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993) (a district court was not required to recuse where the record showed that his relationship with members of the victim's family was that of an "acquaintance, not an intimate, personal relationship"). In this case, the mere fact that Judge Nugent may have had what appears to be innocent contact with certain alleged coconspirators does not suggest a close, personal relationship such that his ability to hear the case would have been compromised.[4] Accordingly, no improper intent

---

[4] Additionally, Calabrese does not suggest that Judge Nugent received extrajudicial information about this case from his prior contact with the afore-mentioned public officials. *See Johnson*, 585 F.3d at 946.

can be gleaned from the government's failure to bring this innocuous behavior to light.[5]

Still, Calabrese complains that by withholding this information, the government has thwarted the Court's own local criminal rules, and prevented him from being tried by a randomly assigned judge. (Doc. No. 55-1 at 2.)  However, "a defendant does not have a right to have his case heard by a particular judge." *Sinito*, 750 F.2d at 515; *see United States v. Gallo*, 763 F.2d 1504, 1532 (6th Cir. 1985). "Nor does a defendant have the right to have his judge selected by a random draw." *Sinito*, 750 F.2d at 515; *see Cruz v. Abbate*, 812 F.2d 571, 574 (9th Cir. 1987) ("a defendant has no right to any particular procedure for selection of the judge"); *see, e.g. Torbert*, 496 F.2d at 156 (rejecting due process argument resulting from transfer of a case under the court's local rules). "Even when there is an error in the process by which the trial judge is selected, or when the selection process is not operated in compliance with local rules, the defendant is not denied due process as a result of the error unless he can point to some resulting prejudice." *Sinito*, 750 F.2d at 515 (citations omitted).

Because many of the crimes charged in the indictment are alleged to have taken place in Cleveland, and many of the witnesses reside in Cleveland, Calabrese attempts to establish prejudice by arguing that the transfer "improperly forces [him] to try

---

[5] Even if the undisclosed information would have provided Judge Nugent with a valid reason to recuse under 28 U.S.C. § 455, the failure to present the information to Judge Nugent would not have amounted to a due process violation. " '[M]ost matters relating to judicial disqualification [do] not rise to a constitutional level.' " *United States v. Prince*, 618 F.3d 551, 561 (6th Cir. 2010) (quoting *Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252, 2259 (2009) (further quotation and citation omitted)). "Due process will require recusal when a judge has 'a direct, personal, substantial, pecuniary interest in a case,' and when, as an objective matter, 'experience teaches that the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable.' " *Id.* (quoting *Caperton*, 129 S. Ct. at 2249 (further quotation and citation omitted).

his case in Akron (Summit County) in violation of the Federal Rules of Criminal Procedure." (Doc. No. 55-1 at 13.) Rule 18 provides:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a *district* where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

Fed. R. Crim. P. 18 (emphasis added). Likewise, the Sixth Amendment guarantees "the right to a speedy and public trial, by an impartial jury of the State and *district* wherein the crime shall have been committed …."[6] U.S. CONST. amend. VI (emphasis added).

"Although the Sixth Amendment and Fed. R. Crim. P. 18 require that a defendant's trial take place in the *district* where the crime was committed, there is no constitutional or statutory requirement that a defendant's trial take place in a specific courtroom or *division* within a federal judicial district." *United States v. Erwin*, 155 F.3d 818, 824 (6th Cir. 1998) (en banc) (emphasis in original) (citations omitted); *see United States v. McKinney*, 53 F.3d 664, 673 (5th Cir. 1995) (citing *United States v. Anderson*, 328 U.S. 699, 704-05 (1946)); *United States v. Betancourt*, 734 F.2d 750, 756 (11th Cir. 1984); *see also United States v. Lipscomb*, 299 F.3d 303, 339 (5th Cir. 2002) ("There is no basis for inferring the existence of a constitutional right to trial within the division where a criminal defendant lives or where a crime was committed.").

The United States District Court for the Northern District of Ohio sits in Cleveland, Akron, Youngstown and Toledo. Thus, whether the case is heard in Cleveland or in Akron (where the undersigned holds proceedings) it will be heard in the State and

---

[6] Additionally, the relevant portion of Article III of the United States Constitution provides for the right to a jury trial in the "State where the said Crimes shall have been committed …." U.S. CONST. art. III, § 2, cl.3.

district in which the crimes are alleged to have been committed.[7] Further, while the above-cited authority makes clear that there is no right to be tried in any particular division within the district, both the Cleveland and Akron Federal Courthouses are located in the Eastern Division of the Northern District of Ohio.[8] Thus, the reassignment of this case under the Court's local rules presents neither a constitutional, nor a statutory problem. *See United States v. Young*, 618 F.2d 1281, 1288 (8th Cir. 1980) (Rule 18 is interpreted to mean that as long as trial takes place within the district in which the offense took place, no error occurs since there is no constitutional right to trial within a certain division); *see also United States v. Addonizio*, 451 F.2d 49, 61 (3d Cir. 1971) (contention that a trial court's transfer of proceedings from one division to another court within the district violated Rule 18 was frivolous).

Further, in accepting the transfer, the undersigned took into consideration the convenience of the defendants and witnesses, and the prompt administration of justice, as required by Rule 18. The Court's past experience of trying five related cases in Akron, including a recent trial lasting approximately 2 months and involving 72 witnesses and over 1,200 exhibits, has taught that Akron provides a convenient forum for

---

[7] The Court further notes that, if the case was returned for reassignment by the random draw, there is no guarantee that it would be assigned to a judge sitting in Cleveland. Numerous related cases arising out of the same federal investigation were randomly assigned to judges sitting outside of Cleveland. *See United State v. Dimora*, Case No. 1:10CR387, originally assigned to the undersigned; *United States v. Russo*, Case No. 1:10CR 384, originally assigned to the undersigned; *United States v. Terry*, Case No. 1:10 CR390, originally assigned to the Honorable David Dowd, sitting in Akron.
[8] The federal courthouse in Youngstown, Ohio, is also located in the Eastern Division. The federal courthouse in Toledo, Ohio, is located in the Western Division of the Northern District of Ohio.

purposes of trying cases arising out of the same FBI investigation.[9] The fact that defendant Calabrese believes that another forum would be more convenient does not establish prejudice.[10] *See United States v. Osum*, 943 F.2d 1394, 1399-1400 (5th Cir. 1991) (interdistrict transfer of mail fraud case from judge to whom it had been randomly assigned was not abuse of discretion where all previous indictments in the case had been transferred to transferee judge, transferee judge had presided over joint trial of coconspirators, and defendant merely argued that the forum was less convenient than that originally designated); s*ee also United States v. Lewis*, 504 F.2d 92, 97-98 (6th Cir. 1974) (the transfer of a particular case from one place within the district to another place within the district is a matter for the local district judge to decide, and assent of the defendant was not required).

Calabrese also attempts to establish prejudice by suggesting that he may call Judge Nugent as a witness at trial. Because Judge Nugent was one of many individuals who had innocent contact with coconspirators, he insists that he would use Judge Nugent's experience to demonstrate that his own contact with coconspirators was also innocent. Calabrese surmises that "[t]hus, Judge Lioi would be placed in the unenviable position of presiding over a case in which she has had discussions with a witness about its facts, which would create an appearance of partiality and require disqualification." (Doc. No. 55-1 at 14, citing 28 U.S.C. § 455(a), (b)(1), (b)(2)).

---

[9] *United States v. Dimora*, Case No. 1:10CR387, tried by the undersigned from January 4, 2012 to March 14, 2012 at the United States Courthouse in Akron, Ohio.

[10] The Court notes that Calabrese's convenience concerns ring hollow inasmuch as he has chosen counsel from Cincinnati, which is outside the district in which the alleged crimes were committed. Further, while Rule 18 does not specifically provide for consideration of the convenience of counsel, the Court observes that Cincinnati is closer to Akron than it is to Cleveland.

The Court questions whether such "reverse 404(b)" evidence would be relevant and, thus, admissible at trial.  *See United States v. Dobbs*, 506 F.2d 445, 447 (6th Cir. 1975) ("evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant").  Defendant Calabrese is not charged with having contact with alleged coconspirators.  Instead, he is charged with engaging in a conspiracy with others to violate various federal statutes by means of fraudulent conduct.  While "a defendant can introduce evidence of someone else's conduct if it tends to negate the defendant's guilt," *United States v. Rose*, 403 F.3d 891, 901 (7th Cir. 2005) (internal citation and quotation omitted), the fact that others under certain circumstances may have had contact with coconspirators in the past that was not fraudulent does not make it any more or less likely that Calabrese's conduct under different circumstances was likewise innocent or without fraud.

Even if defendant Calabrese chose to call Judge Nugent as a witness at trial, this fact, alone, would not require the Court's recusal inasmuch as the Court's discussions with Judge Nugent regarding this case were limited to the charges in the indictment and their relation to the cases already appearing on the Court's docket.  There was no discussion as to any prior contact or association Judge Nugent may have had with any alleged coconspirators.  Any anticipated testimony of Judge Nugent—which Calabrese believes would exonerate him—would not call into question Judge Nugent's reputation, and would not compromise this Court's fitness to preside over a trial in this matter. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, Civil Action No. 91-2600, 1995 U.S. Dist. LEXIS 4004, at *6 (E.D. Pa. Mar. 30, 1995) (explaining that "[i]n…presiding at a jury trial…a judge does not weigh the testimony or pass upon the

credibility of any witness[,]" the court concluded that "[t]hat a fellow judge may be a witness in a pending jury case does not reasonably indicate that the impartiality of the presiding judge may be compromised"); *compare United States v. Gordon*, 354 F. Supp. 2d 524, 528 (D. Del. 2005) (granting a motion for recusal where a fellow judge's reputation is clearly called into question). Thus, Calabrese has failed to demonstrate any error or prejudice from the manner in which this case was transferred.

**III.     CONCLUSION**

          Having reviewed the entire record, the Court comes to the conclusion that this case was properly transferred to the undersigned as a related case under the Court's local criminal rules. There is no reason, therefore, to return this case for reassignment under the random draw.

          **IT IS SO ORDERED**.

Dated: April 27, 2012

                                         _____
                                         **HONORABLE SARA LIOI**
                                         **UNITED SATES DISTRICT JUDGE**

13