UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:11CR437 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| | ) | |
| ANTHONY O. CALABRESE, III, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant, Anthony O. Calabrese, III, for reconsideration of the Court's April 27, 2012 Opinion and Order denying his motion to have the present case reassigned to a district judge by random draw. (Doc. No. 102 [filed under seal].) Because the Court remains convinced that this case was properly transferred to the docket of the undersigned pursuant to the Court's local criminal rules, the motion is **DENIED**.

## I. BACKGROUND

By the superseding indictment, Calabrese is charged with one count each of RICO conspiracy and mail fraud, and multiple counts of conspiracy to commit bribery concerning programs receiving federal funds, bribery concerning programs receiving federal funds, Hobbs Act conspiracy, conspiracy to commit mail fraud and honest

services mail fraud, and tampering with a witness, victim or informant.[1]

The charges against Calabrese stem from an extensive three-year federal investigation into allegations of public corruption in Cuyahoga County, Ohio. Calabrese is one of more 50 individuals who have been charged in connection with the government's investigation. Several of the earliest cases were assigned to the docket of the Honorable Kathleen O'Malley. By agreement of Judge O'Malley and the transferring judges, and pursuant to the Court's local rules, numerous subsequent cases arising out of the same FBI investigation that were originally randomly assigned to other judges were reassigned to Judge O'Malley as related cases. After Judge O'Malley was elevated to the Federal Circuit, these same cases were reassigned to the undersigned. (*See* General Order 2011-5.)

The present case was originally randomly assigned to the docket of the Honorable Donald Nugent. In accordance with the local rules, the government filed a notice of relatedness, identifying the present case as directly related to four other pending criminal matters, all of which arose out of the same federal investigation and were assigned to the docket of the undersigned. (Doc. No. 5.) After receiving briefing from the parties on the question of relatedness, and after conferring with the undersigned on the issue of relatedness, Judge Nugent transferred the case to the undersigned as a related

---

[1] On June 6, 2012, a second defendant indicted with Calabrese, Sanford Prudoff, entered a guilty plea to numerous counts of fraud and conspiracy. Prudoff was sentenced on August 16, 2012.

case under Local Criminal Rule 57.9(b)(3). (October 12, 2011 Order of Reassignment, Doc. No. 22.)

Following the reassignment, defendant moved to have the case returned to the random draw, alleging that the government withheld information from Judge Nugent that would have necessitated his recusal from this case. In support of his motion (and ignoring the fact that his "proof" did not involve, or was in any way related to, him), defendant produced a transcript of a brief telephone call involving Judge Nugent and one of defendant's alleged co-conspirators that represented one of over 44,000 phone calls that were intercepted by the FBI during its investigation. Calabrese also referenced a second phone call involving Judge Nugent and another alleged co-conspirator. The two calls had been the subject of a local newspaper article, and both alleged co-conspirators were Cuyahoga County public officials.

After reviewing the record, including the materials attached to Calabrese's motion to transfer, the Court determined that the case had been properly transferred to the undersigned as a related case, pursuant to the local criminal rules.

## II. STANDARD OF REVIEW

"While a motion for reconsideration is not mentioned in the Federal Rules of Criminal or Civil procedure, it serves a legitimate and valuable role in certain situations." *Roberts v. United States*, No. 1:06CR416, 2011 WL 2982036, at *1 (N.D. Ohio July 21, 2011) (citations omitted). In criminal cases, the court evaluates a motion for reconsideration under the same standards applicable to a motion to alter or amend judgment under Fed. R. Civ. P. 59(e). *Id.* (citation omitted); *see also United States v. Walker,* No. 2:12CR54, 2012 WL 3262745, at *2 (S.D. Ohio Aug. 9, 2012) ("Although

3

the Federal Rules of Criminal Procedure do not specifically recognize a motion to reconsider, such motions are generally reviewed under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e).") (citation and quotation omitted).

Federal Rules of Civil Procedure 59(e) provides that a party may move a court to alter or amend its judgment on the basis that there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). Defendant seeks reconsideration under the second ground, arguing that "newly discovered evidence has come to light that directly impacts the Reassignment Motion." (Doc. No. 102 at 760.)

### III. LAW AND ANALYSIS

Defendant represents that his counsel has received—from an "unknown source"—a portion of an FBI Form 302 summarizing a December 1, 2010 interview between Judge Nugent and FBI agents. (*See* Doc. No. 102 at 761; Doc. No. 102-1.) The main focus of the interview was the phone conversations involving Judge Nugent and the two aforementioned public officials. Also during the course of the interview, it appears that the FBI agents advised Judge Nugent of the existence of the public corruption investigation, and Judge Nugent expressed his surprise at the breadth of the alleged corruption in Cuyahoga County. Because this interview took place before the case was randomly assigned to Judge Nugent—a fact previously unknown to Calabrese and this

4

Court—Calabrese insists that Judge Nugent was required to recuse himself, and return the case to the random draw.

"A judge presiding over a case 'shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned,' such as when the judge 'has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.' " *Fharmacy Records v. Nassar*, 572 F. Supp. 2d 869, 875 (E.D. Mich. 2008) (citing 28 U.S.C. § 455(a), (b)(1)). Recusal is also necessary where the presiding judge knows that he has an "interest that could be substantially affected by the outcome of the proceeding . . ." 28 U.S.C. § 455(b)(4).

Under § 455, a judge must *sua sponte* recuse himself if he knows of facts that would undermine the appearance of impartiality. *Youn v. Track, Inc.*, 324 F.3d 409, 422-23 (6th Cir. 2003) (citing *Liteky v. United States*, 510 U.S. 540, 547-48 (1994)); *see also Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1355 (6th Cir. 1988) (recusal under § 455 is mandated "only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned") (internal quotation and citation omitted). "This standard is *objective* and is not based 'on the subjective view of a party.' " *Wheeler*, 875 F.2d at 1251 (quoting *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988) (emphasis in original)).

Calabrese argues that the fact that Judge Nugent was aware that his calls had been intercepted, and that he had been interviewed by the FBI regarding those calls, changes the analysis from when this Court considered the prior motion. To be sure, the Court did state in its opinion and order denying the initial motion to transfer that there was no record evidence that Judge Nugent was aware that his calls had been captured by

5

the FBI's wiretaps when he transferred the case to the undersigned. The production of the FBI interview summary demonstrates that Judge Nugent was aware at the time of the transfer of both the interception of the calls, and of the fact that he had been interviewed in connection with the FBI's investigation.

Defendant Calabrese is correct that Judge Nugent's knowledge of these facts changes the analysis, but not for the reasons defendant has stated. It is now clear that Judge Nugent—with full awareness that his calls had been captured and that he had been interviewed by the FBI—determined that he was not required to recuse, and elected to transfer the case as related.[2] *See, generally, United States v. Garcia*, 312 Fed. App'x 801, 808 (6th Cir. 2009) ('the court speaks through its records"); *Odekirk v. Ryan*, 85 F.2d 313, 315 (6th Cir. 1936) (same); *see, e.g., Hernandez v. Wilkinson*, No. 1:06CV158, 2010 WL 4026384, at *1 (N.D. Ohio Oct. 13, 2010). Judge Nugent had all of the information before him that was necessary to make the § 455 analysis, he had a duty to *sua sponte* perform such an analysis, and presumably he did make that analysis. There is absolutely no evidence that his analysis led him to the conclusion that he was required to recuse.[3]

Instead, like numerous other cases arising out of the same federal investigation, the present case was transferred from the originally assigned judge to a judge who was already presiding over cases that shared facts and legal issues, pursuant to

---

[2] The fact that Judge Nugent was aware that his calls had been intercepted at the time of transfer actually undermines the argument Calabrese made in his initial motion that the government intentionally withheld this information from Judge Nugent, preventing him from considering whether he should recuse.

[3] Moreover, the Court observes that the government was privy to the same information, and did not challenge Judge Nugent's continued involvement in the case on that ground.

the Court's local rules.[4] *See, e.g., United States v. Terry*, Case No. 1:10CR390, originally assigned to Judge David Dowd, transferred to Judge O'Malley as related on September 16, 2010; *United States v. Dimora*, Case No. 1:10CR387, originally assigned to the undersigned, transferred as related to Judge O'Malley on September 16, 2010; *United States v. Mohammad*, Case No. 1:10CR389, originally assigned to Judge Nugent, transferred as related to Judge O'Malley on September 17, 2010. To date, this Court has already presided over five trials involving the same corruption investigation, and has taken pleas in several other related cases. Under the circumstances, the transfer of the present case to the undersigned as related serves the obvious purpose of the rule, which is to conserve judicial resources by permitting a judge already familiar with the record of one case to also administer related cases, which are likely to share facts and legal issues.

More to the point, Calabrese has failed to identify any possible prejudice that has resulted from the transfer. "Even when there is an error in the process by which the trial judge is selected, or when the selection process is not operated in compliance with local rules, the defendant is not denied due process as a result of the error *unless he can point to some resulting prejudice*." *See United States v. Sinito* 750 F.2d 512, 515 (6th Cir. 1984) (emphasis added). While he claims that Judge Nugent should have—under Local Rule 57.9(b)(1)—returned the case to the random draw for reassignment, the Sixth Circuit has clearly stated that the "local rules governing the assignment of cases are

---

[4] As the notice of related cases indicated, the present case was "directly related" to four cases already pending before the undersigned. Indeed, alleged facts relating to a fraudulent scheme charged in the present indictment involving Alternatives Agency, which was a client of Calabrese's law firm, was one of the focal points of the trial held earlier this year in *United States v. Dimora*, et al., Case No. 1:10CR387.

7

designed as internal housekeeping rules to promote the efficient operation of the district courts; they are not meant to confer rights on litigants." *Id*. (citing *United States v. Torbert*, 496 F.2d 154, 157 (9th Cir. 1974)). There is, therefore, no inherent right to have one's case heard by a particular judge. *Id.* at 514; *see United States v. Gallo*, 763 F.2d 1504, 1532 (6th Cir. 1985). "Nor does a defendant have the right to have his judge selected by a random draw." *Sinito*, 750 F.2d at 514; *see Cruz v. Abbate*, 812 F.2d 571, 574 (9th Cir. 1987) ("a defendant has no right to any particular procedure for the selection of the judge").

Ultimately, the Court concludes that Calabrese has not met his burden of demonstrating any prejudice from the manner in which this case was reassigned.[5] *See Torbert*, 496 F.2d at 156 (where there is no factual showing that the judge to whom the case was transferred entertained prejudice against an accused, there is no due process violation in the transfer). Because defendant cannot demonstrate that he has been prejudiced by the transfer, he has not been denied the due process to which he is entitled. *Sinito,* 750 F.2d at 515.

---

[5] In accepting the transfer, the undersigned took into consideration the convenience of the defendants and witnesses, and the prompt administration of justice, as required by Rule 18. The Court's past experience of trying five related cases in Akron, including a trial lasting approximately 2 months and involving 72 witnesses and over 1,200 exhibits, has taught that Akron (which is less than 40 miles from Cleveland) provides a convenient forum for purposes of trying cases arising out of the same FBI investigation. *See United States v. Osum*, 943 F.2d 1394, 1399-1400 (5th Cir. 1991) (interdistrict transfer of mail fraud case from judge to whom it had been randomly assigned was not abuse of discretion where all previous indictments in the case had been transferred to that judge, judge had presided over joint trial of coconspirators, and defendant merely argued that the forum was less economical than that originally designated).The Court previously set out an in-depth analysis of the relative convenience of the two fora in the related case of *United States v. Forlani*, 1:11CR491. (*See* Doc. No. 95.)

IV. **CONCLUSION**

The Court finds that Calabrese has failed to offer a single argument in his motion for reconsideration that would justify disturbing the Court's ruling on his motion to return the case to the random draw. Calabrese's motion for reconsideration is, therefore, **DENIED**. There still remains approximately two months before the start of trial in this matter. The Court advises defendant and his counsel to devote this time to trial preparation, rather than to the rehashing of issues that have already been fully addressed.

**IT IS SO ORDERED**.

Dated: December 14, 2012

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**