# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:11-cr-00437 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ANTHONY O. CALABRESE, III, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Defendant Anthony O. Calabrese, III ("Calabrese") moves this Court to apply time credits that he earned pursuant to the First Step Act ("FSA") to reduce his remaining term of supervised release. (Doc. No. 153 (Motion).) Plaintiff United States of America (the "government") filed a response (Doc. No. 154 (Response)[1]), but it failed to address the issue that Calabrese's motion raises: can this Court apply Calabrese's unused FSA time credits to reduce his term of supervised release? Having considered the plain text and structure of the First Step Act, the Court finds that Calabrese's motion must be DENIED.

## I.    BACKGROUND

In December 2018, Congress directed the Attorney General, acting through the Bureau of Prisons ("BOP"), to develop a "risk and needs assessment system" for federal prisoners. First Step Act, § 101(a), 132 Stat. at 5195; *see also* 18 U.S.C. § 3632(a). That assessment system would be used to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly." 18

---

[1] Calabrese also filed a reply to the government's response. (Doc. No. 155 (Reply).)

U.S.C. § 3632(a)(3). Congress also created new "incentives and rewards for prisoners" who successfully completed the recidivism-reduction programming to which they were assigned. *Id.* § 3632(d).

One significant incentive was a new type of "time credit." *Id.* § 3632(d)(4). Eligible federal prisoners could earn up to 15 days of such credits for "every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." *Id.* § 3632(d)(4)(A). The relevant statute provides that:

> Time credits earned . . . by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

*Id.* § 3632(d)(4)(C). Specifically, once a prisoner's earned-time credits "equal[ed] . . . the remainder of [his] imposed term of imprisonment," *id.* § 3624(g)(1)(A), the credits would be "applied toward time in prerelease custody," which is defined as placement on home confinement or in a residential reentry center. *Id.* § 3624(g)(1)(A), (g)(2). And where a prisoner's sentence included a term of supervised release, the BOP could also "transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of [the earned] time credits . . . ." *Id.* § 3624(g)(3). Thereby, a prisoner transferred to prerelease custody serves the remainder of his custodial sentence at home or in community custody, rather than in a traditional BOP prison facility. *Id.* § 3624(g)(2). And a prisoner transferred to supervised release early, *see id.* § 3624(g)(3), serves his entire imposed term of supervised release, but can begin serving that term a maximum of one year earlier than the prisoner otherwise would.

2

On June 20, 2013, this Court sentenced Calabrese to a 108-month term of imprisonment, with three years of supervised release. (Doc. 119.) Calabrese represents that he completed his entire term of imprisonment without any incident reports and began his term of supervised release on or about May 1, 2020. Calabrese's term of supervised release is scheduled to expire on April 30, 2023. (Doc. 145.)

Calabrese further represents, and the government seems to concede (although the Court has not received any documentation from the BOP)[2], that Calabrese participated in several FSA-eligible programs, earning him approximately eight months in time credits. (Doc. No. 153, at 2–3; *see also* Doc. No. 154, at 2 ("Although [Calabrese] does appear to qualify for the Evidence-Based Recidivism Reduction Program Incentives under 18 U.C.S. § 3632(d) . . . .).) Calabrese now asks this Court to apply those time credits to reduce his remaining approximately three months of supervised release, to zero.

## II.  DISCUSSION

"[T]he starting point in construing a statute is the language of the statute itself," *Randall v. Loftsgaarden*, 478 U.S. 647, 656, 106 S. Ct. 3143, 92 L. Ed. 2d 525 (1986), but "[s]tatutory language has meaning only in context." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 415, 125 S. Ct. 2444, 162 L. Ed. 2d 390 (2005). For that reason, courts must not "interpret a legal text 'in a vacuum,' but instead discern 'the meaning of a statement' in a law from the 'context in which it is made.'" *United States v. Tate*, 999 F.3d 374, 378 (6th Cir.

---

[2] While the government concedes that Calabrese participated in several FSA-eligible programs, neither the government nor Calabrese has provided documentation from the BOP that would establish the number of time credits Calabrese earned as a result of his participation.

2021) (internal citations omitted); *accord United States v. Meyers*, 952 F.2d 914, 918 (6th Cir. 1992) ("[T]o correctly interpret statutory language, we must look at the specific . . . language as well as the language and design of the statute as a whole.").

Calabrese contends that the approximately eight months of FSA credit he claims he earned should be applied to reduce his remaining term of supervised release. (*See generally* Doc. No. 153.) He insists that the plain text of the FSA commands such a result and points to one case from the Eastern District of Tennessee finding the same. (Doc. No. 153, at 3 (citing *Dyer v. Fulgam*, No. 1:21-cv-299, 2022 WL 1598249 (E.D. Tenn. May 20, 2022), *appeal docketed*, No. 22-5608 (6th Cir. July 19, 2022)).)

In *Dyer*, the court held quite unequivocally that "[c]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. . . . Therefore, the unambiguous, mandatory language of the statute provides that earned-time credits may be applied to a term of supervised release." *Dyer*, 2022 WL 1598249, at *3 (citation and internal quotation marks omitted). Since *Dyer*, other courts to consider this issue have declined to follow *Dyer*'s reasoning. *Orasco v. Yates*, No. 2:22-cv-156, 2022 WL 18027627, at *3 n.4 (E.D. Ark. Dec. 12, 2022) ("[W]hile the [FSA's time credit] program permits early transfer to supervised release, it does not grant the BOP authority to reduce or shorten a prisoner's term of supervised release."); *Harrison v. Fed. Bureau of Prisons*, No. 22-14312, 2022 WL 17093441, at *1 (S.D. Fla. Nov. 21, 2022); *Pillow v. Bureau of Prisons*, No. 4:22-cv-713, 2022 WL 13892877, at *7 (E.D. Ark. Oct. 21, 2022); *see also Mero v. Yates*, No. 2:22-cv-72, 2022 WL 17653228, at *1 n.2 (E.D. Ark. Sept. 27, 2022) ("The 'earned time credits' [defendant] seeks affect when he is eligible for transfer into prelease custody, but do not reduce his sentence or his term of supervised release."); *Komando v.*

*Luna*, No. 22-cv-425, 2023 WL 310580, at *3 (D.N.H. Jan. 13, 2023) ("FSA time credits, when applied, advance the date when the prisoner will be placed in 'prerelease custody' (including home confinement or residential reentry facilities), or accelerate the date when the prisoner will leave BOP custody to start a term of court-imposed supervised release."). If § 3632(d)(4)(C) provided that time credits shall be applied *to reduce a term of supervised release*, then the Court might agree with the decision reached in *Dryer*. But the statute provides that time credits shall be applied *toward* supervised release. Use of the word "toward" means that credits can be applied to bring "time in prerelease custody or supervised release" closer to occurring because credits applied "toward" something generally means to bring that something closer to happening. Black's Law Dictionary (11th ed. 2019) (defining "toward," in relevant part, as "in the direction of; on a course or line leading to (some place or something)").

Further, Section 3632(d)(4)(C) instructs the BOP to transfer eligible prisoners into prerelease custody or supervised release, citing Section 3624(g), which defines "eligible prisoners" as one who "has earned time credits under the [FSA] in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." This clearly provides that the time credits are to reduce the prisoner's prison term.

A look at the language used in other provisions of Section 3624(g) further illustrates the point. Specifically, § 3624(g)(3) states:

> **Supervised release.**--If the sentencing court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

18 U.S.C. § 3624(g)(3). This provision does not suggest that the term of supervised release might be reduced (or eliminated) because of time credits. Rather it contemplated that the prisoner will be released to begin any such term of supervised release that was include in a prisoner's sentence. Plainly, the FSA allows a prisoner to either complete the service of their sentence in prerelease custody or complete their term of supervised release at an earlier date by transferring the prisoner to supervised release at an earlier date—the FSA does not allow a prisoner to reduce the imposed length of supervised release. *Harrison*, 2022 WL 17093441, at *1 ("Based on the plain text of the statute, FSA credits cannot be used to shorten a term of supervised release. Rather, the credits can only be used to allow early transfer to supervised release.")

That the time credits do not apply to reduce a term of supervised release finds further support in § 3624(e), which provides, in part:

> **Supervision after release.**—A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, *during the term imposed*, supervise the person released to the degree warranted by the conditions specified by the sentencing court.

18 U.S.C. § 3624(e) (emphasis added.) There is nothing to suggest that there will ever be any reduction to the court-imposed term of supervised release using FSA time credits—only that the term imposed would begin earlier if FSA time credits were applied to the prison term.

To be sure, reading Section 3632(d)(4)(C) otherwise would lead to absurd results. *See United States v. Fitzgerald*, 906 F.3d 437, 447 (6th Cir. 2018) ("[A]bsurd results are to be avoided, [and the Court] should not construe a statute to produce an absurd result that we are confident Congress did not intend." (internal citation and quotation marks omitted)). Most obvious, reading "toward time in prerelease custody or supervised release" to mean FSA credits shall reduce the

overall terms of either prerelease custody or supervised release would write out any mechanism in the statute for FSA credits to reduce an eligible prisoner's time in custody in prison, which is the intended incentive behind the FSA time credits.[3] *Compare* 18 U.S.C. § 3632(a) (requiring BOP to provide recidivism-reduction programs), *with* 18 U.S.C. § 3632(d) (requiring BOP to provide incentives for prisoners to participate in recidivism-reduction programs). This Court finds it doubtful that Congress believed prisoners would be incentivized to participate in FSA-eligible programs with the promise of shorter periods of home confinement or supervised release rather than shorter periods of custody in prisons. Thus, this Court finds that FSA credits cannot be used to reduce a term of supervised release.

## III.    CONCLUSION

For the foregoing reasons, Calabrese's motion to apply FSA credits to reduce his term of supervised release is DENIED.

**IT IS SO ORDERED**.

Dated: February 13, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[3] Any potential argument that "towards time in prelease custody" is read to reduce time imprisoned, while "toward . . . supervised release" is read to reduce a term of supervised release would require an inconsistent definition of "toward," which runs up against the presumption of consistent usage in statutes. *Delek US Holdings, Inc. v. United States*, 32 F.4th 495, 500 (6th Cir. 2022) ("[C]ourts presume that the same words in the same statute mean the same thing." (quoting *In re Jackson Masonry, LLC*, 906 F.3d 494, 501 (6th Cir. 2018)).